CHRISTOPHER JOSEPH DESALVA (SBN 172209)
LAW OFFICE OF CHRISTOPHER JOSEPH DESALVA
45-902 Oasis Street, Suite D
Indio, CA 92201
Telephone: (760) 447-0031
Email: desalvalaw@gmail.com

Attorney for Petitioner
LUZ AGRIPINA ANGELES-CANO

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LUZ AGRIPINA ANGELES-CANO, | ) | Case No. _______________________ |
| | ) | |
| Petitioner, | ) | **VERIFIED PETITION FOR WRIT** |
| | ) | **OF HABEAS CORPUS PURSUANT** |
| v. | ) | **TO 28 U.S.C. § 2241; REQUEST** |
| | ) | **FOR ORDER TO SHOW CAUSE** |
| FERETI SEMAIA, Warden, | ) | **WITHIN THREE (3) DAYS;** |
| Adelanto ICE Processing Center; | ) | **DECLARATORY RELIEF** |
| THOMAS GILES, Field Office | ) | |
| Director, ICE Los Angeles; | ) | **IMMEDIATE RELEASE** |
| DAVID VENTURELLA, Acting | ) | **REQUESTED** |
| Director, ICE; MARKWAYNE | ) | |
| MULLIN, Secretary, DHS; and | ) | |
| TODD BLANCHE, Attorney | ) | |
| General of the United States, | ) | |
| all in their official capacities, | ) | |
| and their successors, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | Detained at Adelanto ICE |
| | ) | Processing Center, Adelanto, CA |
| | ) | |

## I. INTRODUCTION

1. On December 22, 2022, the Government released Petitioner Luz Agripina Angeles-Cano on immigration parole, subject to a direction to report to ICE within sixty days. She thereafter lived in San Pedro, California until her arrest at an ICE appointment on January 20, 2026. She acknowledges that her first report to ICE was late. This Petition challenges the process supporting her present detention, rather than asserting an unconditional right to remain on parole.

2. While living in the community, Petitioner applied for asylum, submitted biometrics, received employment authorization, and obtained a Social Security number and California identification card. She supported herself cleaning houses. According to her account, she has never been arrested, charged, or convicted of a criminal offense in any country.

3. Petitioner does not speak English. She has required a Spanish interpreter at every stage of these proceedings.

4. Petitioner appeared at the Los Angeles ICE office on January 19, 2026, as instructed. The office was closed for the federal holiday. She returned the next morning and was detained. She recalls no explanation of an individualized reason for detention or separate notice terminating parole. The available Notice to Appear, however, bears a certificate of personal service on January 20, 2026. Her recollection must be evaluated together with that document. As of October 15, 2026, 268 days have elapsed since her arrest.

5. An Immigration Judge conducted a custody hearing on April 27, 2026. Petitioner states that no Spanish interpreter assisted her and that she did not understand the proceeding. She recalls stating her name, raising her hand, and being taken out afterward. She learned of the bond denial from an escorting officer. Her account does not establish when the hearing concluded or what counsel and the judge said; the custody record is needed to resolve those questions.

6. The April 28, 2026 form order denied bond on flight-risk grounds. A subsequent May 7, 2026 bond memorandum states that the judge considered the parties' arguments and evidence and recorded the oral findings and rationale in a Digital Audio Recording. Ex. J. Petitioner expressly acknowledges that memorandum. She seeks production of the identified recording and a determination whether the actual proceeding afforded meaningful participation and applied the governing legal standards.

7. Petitioner does not ask the Court simply to reweigh flight-risk evidence. Her principal claim is that detention continues after a custody proceeding she could not understand or meaningfully participate in. She seeks review of that alleged constitutional defect, supported by the actual hearing record, and of the legal authority Respondents invoke for continued custody.

8. The relief Petitioner seeks is immediate release. She has been confined for 268 days. The single custody hearing she has received was, on her account, conducted without the Spanish interpretation she needed in order to take part in it, and the order denying bond recites a flight-risk conclusion without stated findings. Where prolonged confinement rests on a custody proceeding in which the detainee could not meaningfully participate, the writ itself is the remedy. Independently, her confinement has now exceeded by nearly three months the six-month period that *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), treats as the outer bound of presumptively reasonable civil immigration detention, and it has no foreseeable end.

9. In the alternative, and only if the Court concludes that a lesser remedy can cure the violation, Petitioner requests a conditional writ: that she be released unless, within seven days, Respondents afford her a custody hearing before a neutral and detached adjudicator, with competent Spanish interpretation, at which *Respondents* bear the burden of proving by clear and convincing evidence that she is a danger to the community or a flight risk, and at which her ability to pay and alternative conditions of release are considered. See *Casas-Castrillon v. Department of Homeland Security*, 535 F.3d 942, 949 (9th Cir. 2008) (the Government may not detain a person "for a prolonged period

without providing him a neutral forum in which to contest the necessity of his continued detention"); *Singh v. Holder*, 638 F.3d 1196, 1203-04 (9th Cir. 2011); *Hernandez v. Sessions*, 872 F.3d 976, 990-91 (9th Cir. 2017). Petitioner also requests an order to show cause returnable within three (3) days under 28 U.S.C. § 2243, production and preservation of the custody record, and narrowly tailored relief protecting this Court's ability to adjudicate her custody claims.

## II. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 2241(a) and (c)(3), which authorize the federal courts to grant writs of habeas corpus to persons held in custody in violation of the Constitution or laws of the United States. See *Hernandez v. Sessions*, 872 F.3d 976, 988-90 (9th Cir. 2017); *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001).

11. This Court is the district of confinement and has territorial jurisdiction over Petitioner's immediate physical custodian under 28 U.S.C. § 2241(a). Petitioner is detained at Adelanto in San Bernardino County, within this District and its Eastern Division. See *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35, 442 (2004). Section 2241(d), which concerns persons held under state-court judgments, is not the basis for this Petition.

12. Section 1226(e) limits review of discretionary custody judgments but does not foreclose a challenge to the legal framework or constitutionally deficient procedures governing detention. *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) (§ 1226(e) "does not limit habeas jurisdiction over constitutional claims or questions of law"); *Hernandez*, 872 F.3d at 989. Petitioner seeks review of those issues, not a fresh discretionary bond assessment.

13. This Petition seeks relief from physical detention, not review or a stay of the removal order or adjudication of asylum. Section 1252(a)(5) channels review of removal

orders to the court of appeals. The custody claims pleaded here are distinct from such review. See *Jennings v. Rodriguez*, 583 U.S. 281, 292-95 (2018) (plurality discussion of § 1252(b)(9)). Petitioner seeks relief only for herself and does not request classwide relief under § 1252(f)(1).

## III. PARTIES

14. Petitioner LUZ AGRIPINA ANGELES-CANO is a 57-year-old native and citizen of Peru. She has resided in the United States since December 2022. She is detained at the Adelanto ICE Processing Center, 10250 Rancho Road, Adelanto, California 92301. Her primary language is Spanish and she does not speak English.

15. Respondent FERETI SEMAIA is identified by counsel as the Warden (or Facility Administrator) of the Adelanto ICE Processing Center and is Petitioner's immediate physical custodian. See Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). The facility is operated by The GEO Group, Inc. under contract with ICE.

16. Respondent THOMAS GILES is the Field Office Director of the Los Angeles Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement, the office with authority over Petitioner's custody. He is sued in his official capacity.

17. Respondent DAVID VENTURELLA is the Acting Director of U.S. Immigration and Customs Enforcement, 500 12th Street SW, Washington, D.C. 20536.

18. Respondent MARKWAYNE MULLIN is the Secretary of the U.S. Department of Homeland Security, 2707 Martin Luther King Jr. Avenue SE, Washington, D.C. 20528.

19. Respondent TODD BLANCHE is the Attorney General of the United States, U.S. Department of Justice, 950 Pennsylvania Avenue NW, Washington, D.C. 20530.

20. Each Respondent is sued in his official capacity, together with his successors in office. Fed. R. Civ. P. 25(d).

## IV. ADMINISTRATIVE REVIEW AND REQUEST TO EXCUSE FURTHER EXHAUSTION

21. Section 2241 contains no statutory exhaustion requirement. Exhaustion in habeas "can be either statutorily required or judicially imposed as a matter of prudence," and where the requirement is prudential "courts have discretion to waive" it. *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). Waiver is appropriate where "administrative remedies are inadequate, irreparable injury may occur without immediate judicial relief, or exhaustion otherwise would be futile." *Laing v. Ashcroft*, 370 F.3d 994, 1000-01 (9th Cir. 2004); see *Hernandez*, 872 F.3d at 988.

22. Petitioner appealed the April custody determination to the BIA on May 1, 2026 and submitted a brief on July 13, 2026. Ex. L. On information and belief, that appeal remains pending. As of October 15, 2026, 167 days have elapsed since its filing. Petitioner requests expedited judicial consideration of her ongoing constitutional claim.

23. The BIA has authority to review custody determinations and to reverse or remand them. See 8 C.F.R. § 1003.1(b)(7), (d)(3)(ii). Petitioner does not contend that the Board is powerless to afford relief. She requests waiver of further prudential exhaustion because she has pursued the available appeal, remains detained, and alleges a continuing deprivation of meaningful participation. The Court should consider the appeal's status, the issues raised there, and the availability of timely agency correction before deciding waiver.

24. Delay alone does not establish futility. Petitioner requests that Respondents identify the current disposition of both agency appeals and any available expedited remedy. Petitioner further notes that the Board has twice in 2026 reaffirmed that the detainee bears the burden at a custody redetermination. *Matter of Yujing Shentu*, 29 I&N Dec. 595 (BIA 2026); *Matter of M-S-V-*, 30 I&N Dec. 130 (BIA 2026). The Board is bound by its own precedent, which bears on whether further agency review can afford the burden allocation Petitioner contends due process requires. If the Court declines to

excuse further exhaustion, Petitioner requests an expedited schedule and preservation of the record rather than an assumption that the pending appeal already resolved these claims.

25. Nothing in this Petition asks the Court to decide whether Petitioner is removable or entitled to asylum. Those questions remain before the agency. Only the lawfulness of her physical custody is presented here.

## V. FACTUAL BACKGROUND

### A. Entry, Parole, and the Government's Own Custody Decision

26. Petitioner entered the United States near Calexico, California on December 21, 2022, and was encountered by the U.S. Border Patrol. She was processed overnight.

27. The release records include an I-213 bearing a parole notation, an I-385 booking record, and an I-831 directing her to report to ICE within sixty days. Ex. A. These documents establish a release subject to reporting conditions. They do not, on the present record, establish that parole remained unexpired through January 2026.

28. The Spanish-language ICE reporting notice contemplated consideration for enrollment in an Alternatives to Detention program. Ex. B. Petitioner states that she was not given an ankle monitor or reporting technology. The I-94 copy in the available packet contains only the departure-record side and does not establish the expiration date of parole. Ex. C.

29. The Government released Petitioner in December 2022 without requiring a monetary bond. That prior release is relevant background, but it does not establish that officials made express findings of no danger or flight risk, or that later custody required proof of changed circumstances as a statutory prerequisite.

**B. Petitioner's Life in the United States**

30. Petitioner lived in San Pedro, California with her friend Mónica Lezameta Malpartida. She supported herself cleaning houses.

31. USCIS received Petitioner's affirmative asylum application on September 20, 2024 and scheduled biometrics for October 8, 2024. Ex. D. Those notices document the application and appointment; they do not establish that a separate affirmative application remains pending today after the later immigration-court proceedings.

32. Available copies include a California identification card, an SSA receipt, and a USCIS employment-authorization notice under category C08. Ex. E. Petitioner states that the originals of her EAD, Social Security card, and identification were taken at arrest. Employment authorization is relevant to community ties but does not itself confer admission, extend parole, or bar detention.

33. Petitioner acknowledges that she did not report within the sixty-day period. She states that she first reported in 2025 after receiving advice that she did not need to report earlier, and that ICE allowed her to depart and scheduled the January 2026 appointment. That account is relevant to current flight risk but does not establish a waiver of the earlier reporting requirement. The reporting history and appointment records should be produced.

34. Petitioner reports that she has never been arrested, charged, or convicted of any criminal offense in the United States, in Peru, or in any other country.

**C. The January 20, 2026 Arrest at a Government-Ordered Appointment**

35. ICE directed Petitioner to appear at its Los Angeles office on January 19, 2026, at 7:00 a.m. That date was the federal Martin Luther King, Jr. holiday and the office was closed. An officer outside the building instructed those who had come to

photograph themselves at the entrance as proof of their appearance and to return the next day.

36. Petitioner did so, and returned on January 20, 2026 at 7:00 a.m. She presented herself, was photographed and fingerprinted, produced her Employment Authorization Document on request, and confirmed that she had an attorney. She was told to return at 9:00 a.m., and she did.

37. Petitioner recalls being handcuffed and told that detention had been ordered by the administration. She recalls no individualized explanation or separate parole-termination notice. Ex. G includes an I-862 dated January 20, 2026, checking the category for a person present without admission or parole rather than the arriving-alien box. Its service certificate records personal service that day and oral notice in Spanish. Petitioner does not deny the existence of that document; she requests review of the actual legal basis and sequence of her re-detention.

38. Respondents confiscated Petitioner's Employment Authorization Document, Social Security card, California identification card, cellular telephone, $57 in cash, and her earrings. None has been returned.

39. Petitioner was transported to the Adelanto ICE Processing Center, arriving in the early hours of January 21, 2026. She has remained there continuously since.

40. Counsel has not located a separate parole-termination notice or a complete parole authorization showing its expiration date. That evidentiary gap is not proof that parole could only have terminated through a separate notice. Under 8 C.F.R. § 212.5(e)(1), expiration can terminate parole automatically; under § 212.5(e)(2)(i), service of a charging document can constitute written notice of termination. The I-862 must therefore be considered before a violation of that regulation can be established.

**D. The Prior Habeas Action and the April 2026 Custody Hearing**

41. On March 25, 2026, Petitioner, through prior counsel, filed a petition for writ of habeas corpus in this District, *Angeles Cano v. Mullin*, No. 5:26-cv-01436-FLA (RAO). The sole relief sought was an order compelling an individualized bond hearing under 8 U.S.C. § 1226(a).

42. Respondents' April 6, 2026 response stated that Petitioner appeared to belong to the bond-eligible class in *Maldonado Bautista* and acknowledged that a hearing could be ordered. Ex. H. On April 20, the District Court ordered an individualized § 1226(a) hearing within seven days and prohibited transfer pending disposition. Ex. I. The current statutory claim relies on that case-specific history, while recognizing that the earlier response was qualified and does not alone settle every later custody question.

43. The hearing was held on April 27, 2026 before Immigration Judge Steven Marcus at the Adelanto Immigration Court.

44. The earlier bond submission identified Wendy Yamileth Arias as sponsor and included community-support materials, selected copies of which are attached. Ex. N. The filing stamps on the selected supporting materials show April 27, 2026 at 7:27 a.m. Petitioner's proposed residence upon release is with Mónica Lezameta Malpartida. The prior financial sponsor and current proposed residential sponsor serve different roles and should not be treated as the same person.

45. Petitioner states that no Spanish interpreter assisted her at the April hearing and that she did not understand the discussion or outcome. She recalls only being asked her name and raising her hand before being taken out afterward. She does not have personal knowledge of the full legal arguments presented in English or whether counsel made an interpreter request or objection.

46. The April 28 form order stated that bond was denied because of significant flight risk that no amount of bond could mitigate. Ex. J. On May 7, the judge issued a bond memorandum stating that all arguments and evidence had been considered,

referring to Exhibits 1-3, and identifying a Digital Audio Recording containing the findings and rationale. The memorandum incorporated an addendum of law. All of those materials are part of the custody record.

47. The form order alone does not show whether the judge considered the sponsor evidence, which burden was applied, or what findings supported the flight-risk conclusion. The May memorandum expressly points to an oral explanation. Petitioner accordingly challenges the alleged absence of meaningful participation and requests that any additional legal-error claim be evaluated against the complete record, rather than inferred solely from the brevity of the form.

48. Prior counsel and Respondents reported that receipt of the requested hearing mooted the earlier case. On May 14, 2026, the Court dismissed that action as moot under Rule 41(a)(2). Ex. K. Petitioner discloses that disposition and does not represent that the earlier TRO remains operative. The present Petition addresses alleged defects in the hearing and continuing custody; the earlier dismissal did not adjudicate those constitutional claims on their merits. Petitioner concurrently submits a Notice of Related Cases disclosing the earlier action.

**E. Proceedings Since, and the Present Posture**

49. The custody appeal and its brief appear in Ex. L. Petitioner alleges on information and belief that the appeal remains pending.

50. The EOIR Automated Case Information printout dated October 8, 2026 reports that the Immigration Judge ordered removal on July 17, 2026 and that an appeal received August 5, 2026 is currently pending. Ex. M also includes the BIA receipt. This confirms the reported merits decision date and the pending merits appeal as of the printout. The signed decision remains necessary to identify its precise grounds; the automated system does not establish the disposition of the separate custody appeal.

51. If the ordinary, timely merits appeal remains pending and no exception applies, the IJ's removal order is not administratively final under 8 C.F.R. § 1241.1, and its execution is stayed under § 1003.6(a). That would preclude treating the order as final solely because the IJ ruled. It does not, by itself, resolve whether pre-finality detention falls under § 1226 or § 1225. Petitioner asks Respondents to identify the applicable provision and supporting custody records.

52. As of October 15, 2026, Petitioner has been detained for 268 elapsed days, including 170 days since the April 28 order. She reports hypertension treated with medication. She does not allege, without medical evidence, that treatment has been denied or that her condition alone requires immediate release.

## VI. LEGAL FRAMEWORK

### A. Petitioner Is Detained Under 8 U.S.C. § 1226(a)

53. Petitioner contends that § 1226(a) governs her January 2026 interior arrest, consistent with the prior federal order and agency exercise of bond jurisdiction. No qualifying criminal ground for § 1226(c) appears in the materials reviewed. Respondents should disclose any contrary asserted basis and the I-286 or other custody determination supporting it.

54. *Rodriguez Vazquez v. Bostock*, No. 25-6842 (9th Cir. July 30, 2026) (published), holds that unadmitted noncitizens apprehended in the interior are subject to the detention regime of § 1226 rather than § 1225(b)(2)(A), and are entitled to bond hearings under § 1226(a). Petitioner invokes it based on her January 2026 interior re-arrest, while acknowledging her initial encounter near the border in 2022. Parole is not admission and does not automatically convert every § 1225 detainee to § 1226(a). *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), addresses return to § 1225 custody following termination of parole for persons initially arrested while arriving. The Court should

determine the governing provision from the actual processing and re-arrest records, not from parole alone.

55. Petitioner discloses that on October 1, 2026 the Supreme Court granted certiorari in Rhoney v. Barbosa da Cunha, No. 26-104, on the question whether noncitizens who entered without inspection and were later detained in the interior may be subjected to mandatory detention without a bond hearing. Rodriguez Vazquez remains binding in this Circuit, and no stay of it appears on that docket. Petitioner preserves her challenge to the adequacy of the custody process she actually received. The statutory classification may affect the procedures and relief available; the Court should address that question together with her individualized constitutional claims.

**B. Due Process Governs the Revocation of Conditional Liberty**

56. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty" the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690. Civil detention must bear a reasonable relation to the purpose for which the individual is held. Id. at 690-91.

57. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), supplies the framework for assessing the alleged procedural deprivation: the liberty interest, the risk of error and value of safeguards, and the governmental interest. Petitioner does not claim that every immigration re-arrest constitutionally requires an advance hearing. Her claim concerns the adequacy and timeliness of the process supporting her ongoing confinement after years in the community.

**C. A Custody Determination Must Be Individualized and Is Reviewable**

58. *Martinez v. Clark*, 124 F.4th 775 (9th Cir. 2024), allowed deferential review of a dangerousness determination made at a court-ordered constitutional hearing under §

1226(c). It did not authorize unrestricted reweighing of statutory § 1226(a) bond decisions. Its discussion of omitted probative evidence is relevant by analogy only if the complete record establishes a legal defect. Petitioner principally relies on the independently reviewable participation claim.

59. *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006), permits consideration of residence, ties, work history, appearance history, criminal and immigration history, and manner of entry. It does not require a written checklist of every factor in each form order. The question here is whether the actual hearing applied the law and afforded a meaningful opportunity to respond to the grounds asserted for detention.

60. *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), rejected an automatic entitlement to a second § 1226(a) bond hearing with a government clear-and-convincing burden based on detention length alone. Petitioner distinguishes that decision in Section VI.D below rather than disputing it. She does not assert that crossing six months, standing alone, requires release or a shifted burden.

61. *Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017), held that due process likely requires consideration of a detainee's financial circumstances and of alternative conditions of release in setting bond under § 1226(a). Id. at 990-91. *Martinez* distinguished *Hernandez* where detention rested on a legally sufficient dangerousness finding. The April 28 order rested on flight risk alone, so that distinction does not displace *Hernandez* here. Petitioner requests consideration of feasible release conditions in any lawful redetermination, but does not treat the failure to list alternatives on the form as conclusive proof of a constitutional violation. If Respondents assert § 1225 detention, Petitioner preserves an as-applied due process claim; *Padilla v. U.S. Immigration & Customs Enforcement*, No. 24-2801 (9th Cir. Sept. 21, 2026), held only that such a claim is not jurisdictionally barred and is not foreclosed by *Department of Homeland Security v. Thuraissigiam*, and expressly did not decide what protections are due.

D. The Requested Government Burden Is an Individualized Constitutional Claim

62. Petitioner requests a government burden of clear and convincing evidence as an individualized constitutional safeguard in any hearing ordered to cure the alleged defects after prolonged detention. Singh v. Holder, 638 F.3d 1196, 1203-04 (9th Cir. 2011), applied that burden to hearings under Casas-Castrillon v. Department of Homeland Security, 535 F.3d 942 (9th Cir. 2008). Those cases arose in a different procedural setting; they do not establish an automatic burden shift for every detainee under § 1226(a).

63. Petitioner states the limits of that authority candidly. *Jennings v. Rodriguez*, 583 U.S. 281 (2018), rejected the constitutional-avoidance construction of § 1226 on which *Casas-Castrillon*'s statutory holding rested, and *Hernandez Avilez v. Garland*, No. 20-16142 (9th Cir. Sept. 8, 2022), held that *Jennings* abrogates *Casas-Castrillon*'s detention-shifting framework. *Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022), held that 8 U.S.C. § 1231(a)(6) does not itself require a bond hearing after six months at which the Government must prove flight risk or dangerousness by clear and convincing evidence. Neither decision reached the constitutional question.

64. Aleman Gonzalez v. Barr, 955 F.3d 762, 781 (9th Cir. 2020), described Singh as grounded in constitutional procedural due process and treated its burden rule as surviving Jennings in the setting addressed there. The Supreme Court reversed that judgment on the classwide-injunction issue under § 1252(f)(1). Garland v. Aleman Gonzalez, 596 U.S. 543 (2022). Petitioner cites that reasoning with its subsequent history and does not treat it as resolving the application of Rodriguez Diaz to her own § 1226(a) claim.

65. Rodriguez Diaz expressly reserved whether Singh remains good law in any respect following Jennings. 53 F.4th at 1202 n.4. Judge Paez, joined by ten judges, argued in a statement respecting denial of rehearing en banc that Singh's constitutional holding remains binding. Rodriguez Diaz v. Garland, 83 F.4th 1177, 1179 (9th Cir.

2023). That statement is persuasive reasoning, not the panel's holding or an en banc decision. The controlling panel decision must therefore be addressed on its own terms.

66. Petitioner does not overread *Rodriguez Diaz*, and does not read it as foreclosing her request. The panel held that § 1226(a)'s procedures satisfied due process facially and as applied to a detainee who had received a bond hearing and had then been detained roughly fourteen additional months, and that duration alone cannot sustain a due process challenge by a detainee "who has been afforded the process contemplated by § 1226(a)." That is the respect in which this case differs. Petitioner does not contend that the passage of time, standing alone, shifts the burden. She contends that she was never afforded the process § 1226(a) contemplates, because the single hearing she received was conducted in a language she does not speak.

67. *Rodriguez Diaz* reserved precisely that claim. The panel wrote that "we do not foreclose all as-applied challenges to § 1226(a)'s procedures," 53 F.4th at 1213, and that "we have no occasion to consider the constitutional limits of prolonged immigration detention," id. at 1214. It also observed that deficiencies in individual proceedings may be redressable by means short of a general change in the burden of proof. Petitioner's request is individual rather than categorical: she asks for the correct allocation of the burden at a hearing that cures a specific defect in her own proceeding, not a rule governing every § 1226(a) detainee.

68. The distinction between an initial custody hearing and a hearing addressing prolonged detention is recognized in this Circuit. *Hernandez*, 872 F.3d at 983 n.8, notes that initial bond hearings carry lesser constitutional procedural protections than hearings addressing prolonged detention. Petitioner's detention passed six months in July 2026 and now stands at 268 days, of which 170 days have followed the order denying bond.

69. Petitioner addresses Respondents' likely authority directly. 8 C.F.R. § 1236.1(c)(8) provides that the detainee "must demonstrate" that release would not pose a danger and that she is likely to appear, and the Board has applied that allocation from Matter of Adeniji, 22 I&N Dec. 1102, 1113 (BIA 1999), through Matter of Yujing

Shentu, 29 I&N Dec. 595 (BIA 2026), and Matter of M-S-V-, 30 I&N Dec. 130 (BIA 2026). Petitioner asks the Court to determine whether that allocation is constitutionally adequate as applied to her facts. Section 1226(e) does not bar that legal question. Singh, 638 F.3d at 1202. District courts in this Circuit have applied a government burden to individualized prolonged-detention claims and granted relief in the conditional form Petitioner requests. See Baghdasaryan v. Warden, California City Detention Facility, No. 1:25-cv-01555-KES-EPG-HC (E.D. Cal. Feb. 20, 2026), Dkt. 17 (adopting the February 11 findings and recommendation and ordering release unless a conforming bond hearing with a government clear-and-convincing burden was provided within thirty days). That district-court decision is persuasive, not binding authority.

**E. Zadvydas and Demore Supply the Constitutional Measure of Prolonged Civil Detention**

70. *Zadvydas v. Davis* holds that civil immigration detention is constitutionally tolerable only while it bears a "reasonable relation" to its nonpunitive purposes of preventing flight and protecting the community, and that this relation weakens as confinement lengthens. 533 U.S. at 690-91 (citing *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). To avoid the "serious constitutional problem" that indefinite confinement would present, the Court recognized six months as the period of presumptively reasonable detention, after which a detainee's showing obliges the Government to respond with evidence sufficient to rebut it. *Id.* at 699-701. Petitioner is not presently detained under § 1231(a)(6), because her removal order is not administratively final while her timely merits appeal remains pending. 8 C.F.R. § 1241.1(a). She invokes *Zadvydas* for its constitutional reasoning, which does not depend on the statutory subsection authorizing custody, and for the measure it supplies of when civil immigration detention has become prolonged.

71. *Demore v. Kim*, 538 U.S. 510 (2003), upheld mandatory detention under § 1226(c) for "the brief period necessary" to complete removal proceedings, relying on statistics showing that such detention lasted roughly a month and a half in the typical case and about five months where the detainee appealed. *Id.* at 513, 529-31. Justice Kennedy, whose vote was necessary to the judgment, wrote that a detainee "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532 (Kennedy, J., concurring). *Zadvydas* and *Demore* together establish that the constitutionality of civil immigration detention is not fixed at its inception: detention that is reasonable for a brief period may become unreasonable, and may require additional process or release, as it lengthens.

72. The Ninth Circuit has drawn from those decisions the principle that "prolonged detention without adequate procedural protections would raise serious constitutional concerns," *Casas-Castrillon*, 535 F.3d at 950, and has treated detention exceeding six months as "prolonged" for that purpose. *Diouf v. Napolitano*, 634 F.3d 1081, 1091-92 & n.13 (9th Cir. 2011). Petitioner acknowledges, as stated in Section VI.D, that *Jennings* abrogated the statutory constructions those cases adopted through constitutional avoidance. *Jennings* did not, however, decide the constitutional question; it remanded it. 583 U.S. at 312-13. The Ninth Circuit has since held that *Diouf*'s requirement of a bond hearing after prolonged detention under § 1231(a)(6) is not clearly irreconcilable with *Jennings* and remains binding. *Aleman Gonzalez v. Barr*, 955 F.3d 762 (9th Cir. 2020), rev'd on other grounds, 596 U.S. 543 (2022). And *Rodriguez Diaz*, while rejecting a duration-based burden shift for a detainee who had received an adequate § 1226(a) hearing, expressly reserved "the constitutional limits of prolonged immigration detention." 53 F.4th at 1214.

73. In assessing whether detention pending removal proceedings has become unreasonably prolonged, district courts in this Circuit have weighed (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of confinement; (4) whether delays are attributable to the detainee or to the Government;

and (5) the likelihood that the proceedings will culminate in a final order of removal. See, e.g., *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106, 1117-18 (W.D. Wash. 2019); *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 776-77 (N.D. Cal. 2019). Those decisions pre-date *Rodriguez Diaz* and are persuasive rather than binding. Petitioner relies on them for the structure of the inquiry, applied to her individual circumstances in Count Five, and not for any categorical rule.

## VII. CLAIMS FOR RELIEF

**COUNT ONE — Fifth Amendment: Meaningful Participation in the Custody Hearing**

74. Petitioner realleges each preceding paragraph.

75. Petitioner does not speak English and states that no Spanish interpreter assisted her at the April 27 hearing. Her loss of physical liberty required a meaningful opportunity to understand the custody issues and to respond through procedures appropriate to the hearing. “It is long-settled that a competent translation is fundamental to a full and fair hearing.” *Perez-Lastor v. INS*, 208 F.3d 773, 778 (9th Cir. 2000); see id. at 777 (due process claims reviewed de novo). *Perez-Lastor* arose from a removal hearing; Petitioner invokes its fairness principle in this custody setting. *He v. Ashcroft*, 328 F.3d 593, 598 (9th Cir. 2003), holds that faulty or unreliable translation can undermine the evidence on which an adverse determination rests; Petitioner cites it for that evidentiary proposition only and notes that the court there expressly declined to decide whether the translation failure violated due process.

76. The alleged lack of interpretation prevented Petitioner from understanding the Government's grounds for detention, explaining her delayed first reporting and later appointments, and clarifying the different roles of her sponsor and proposed host. Those subjects directly bear on the flight-risk finding. Representation by counsel is relevant but

does not alone establish that Petitioner could understand or assist in answering factual allegations.

77. Petitioner alleges prejudice because the opportunity she lost concerned the reporting history and release arrangements material to the stated flight-risk ground. She does not infer prejudice solely from losing bond or from an abbreviated form order. The governing showing is that a competent translation "would have made a difference in the outcome of the hearing." Perez-Lastor, 208 F.3d at 780; see Singh, 638 F.3d at 1208-09 (record-based claims require a prejudice showing). Petitioner requests comparison of her account, and her testimony under oath if required, with the recording, counsel's presentation, interpreter records, and any factual grounds actually relied upon by the judge.

78. If established on that record, the denial of meaningful participation violates the Fifth Amendment and renders continued reliance on the defective custody process unlawful under § 2241(c)(3).

**COUNT TWO — Legal Standards Governing the Custody Determination**

79. Petitioner realleges each preceding paragraph.

80. Petitioner challenges application of an incorrect legal standard or a denial of the opportunity to present material evidence, to the extent established by the complete custody record. She does not ask the Court to replace the IJ's discretionary weighing with its own.

81. The April form order and May memorandum must be read together with the recorded oral decision. Neither a one-sentence form nor the existence of a general legal addendum proves that individualized reasoning was absent.

82. Petitioner requests a determination whether the decision rested on a categorical detention rule inconsistent with the applicable custody authority, rather than a discretionary judgment the Court lacks power to reweigh.

83. The complete record should identify the burden actually applied. Petitioner does not contend that the April 20 order itself imposed a government clear-and-convincing burden; its text ordered a hearing under § 1226(a). Her contention that Respondents bear that burden is a constitutional one, pleaded in Section VI.D and in Count Four, and is addressed to the hearing she now seeks rather than to the terms of the earlier order.

84. The sponsor materials and appearance history identify issues Petitioner wished to explain. They do not establish that the IJ ignored them. A claim of refusal to consider material evidence must be supported by the hearing record and any written findings.

85. If the record establishes a correct legal standard, meaningful participation, and consideration of the presentation, disagreement with the resulting flight-risk assessment belongs in administrative review rather than a habeas reweighing.

86. Petitioner requests production of the record before final disposition and leave to refine any legal-error allegations supported by it. She expressly disavows the premise that no oral rationale exists merely because counsel does not yet possess the recording.

87. To the extent a reviewable legal or constitutional error is established, Petitioner seeks relief tailored to that error, including a conditional writ requiring correction within a specified time.

**COUNT THREE — Fifth Amendment: Continued Detention Without Adequate Process**

88. Petitioner realleges each preceding paragraph.

89. Petitioner has spent more than eight months in custody after a January 2026 interior arrest. The duration and her prior community residence are relevant to the *Mathews* balance; neither duration nor absence of criminal history alone establishes an entitlement to release.

90. Petitioner alleges that the only confirmed custody hearing did not provide interpretation necessary to her meaningful participation. She seeks relief from continued detention resting on that alleged defect, rather than a second hearing merely because time has passed.

91. A prompt hearing with competent Spanish interpretation would reduce the asserted risk of factual error regarding reporting and release arrangements. The Government retains its legitimate interest in appearance and may present individualized grounds for continued detention under the applicable statute.

92. Petitioner recalls being present but not called on July 28 and not being produced on August 18, 2026. The available account does not establish whether either date involved a custody hearing, a continuance, or a different proceeding. Petitioner does not characterize those events as proven additional bond denials. Their nature and disposition should be identified from the records.

93. A later adequate custody hearing could affect the alleged ongoing violation. Petitioner requests production of any such decision and hearing record, including any evidence of interpretation and participation, before the Court decides whether relief remains warranted.

**COUNT FOUR — Fifth Amendment: Prolonged Detention Without a Custody Hearing at Which Respondents Bear the Burden of Proof (Pleaded in the Alternative)**

94. Petitioner realleges each preceding paragraph.

95. Petitioner has been detained for 268 days, of which 170 days have followed the April 28, 2026 order. The regulation ordinarily places the burden on the detainee, 8 C.F.R. § 1236.1(c)(8), but the actual allocation at her hearing must be established from the custody record. She reports that the hearing lacked the Spanish interpretation she required.

96. Applied to those facts, the Mathews factors support a government burden. First, the private interest is freedom from physical confinement, Zadvydas, 533 U.S. at 690, held by a 57-year-old woman who reports no criminal history, more than three years of community residence, employment authorization, an application for asylum and a merits appeal shown as pending by the October 8 EOIR status printout, and a proposed residence. Second, the risk of erroneous deprivation is elevated here: she alleges the hearing proceeded without interpretation, the form order states a conclusion, and the recorded oral findings have not yet been produced. If the ordinary detainee burden was applied, she had to discharge it in a proceeding she says she could not follow. A government burden of clear and convincing evidence, with interpretation and a contemporaneous record, is a targeted safeguard against that risk. Third, the governmental interest in securing appearance is legitimate but is not defeated by the allocation of a burden; Respondents retain every opportunity to establish flight risk, and reasonable conditions of release remain available. Hernandez, 872 F.3d at 990-91.

97. Petitioner contends that, on this individualized balance, due process requires that Respondents justify Petitioner's continued confinement by clear and convincing evidence that she is a danger to the community or a flight risk. Singh, 638 F.3d at 1203-04; Casas-Castrillon, 535 F.3d at 949-51.

98. This count is pleaded in the alternative to Counts One through Three and is independent of the statutory question in Section VI.A. If the Court grants relief on Count One, it need not reach this count. If the Court concludes that the appropriate remedy is a further hearing rather than release, this count identifies the standard that hearing must apply.

99. Petitioner expressly does not seek a ruling that every detainee under § 1226(a) is entitled to a shifted burden after a fixed period, and does not seek classwide relief. 8 U.S.C. § 1252(f)(1). The claim is as-applied and limited to her own custody.

**COUNT FIVE — Fifth Amendment: Unreasonably Prolonged Civil Detention Under *Zadvydas* and *Demore* (Pleaded in the Alternative)**

100. Petitioner *realleges* each preceding paragraph.

101. Petitioner has been in continuous civil custody since January 20, 2026, a period of 268 days as of the filing of this Petition. Her detention passed the six-month mark on July 20, 2026, and has now exceeded by nearly three months the period that *Zadvydas* treats as presumptively reasonable. 533 U.S. at 701. It has lasted more than five times the month-and-a-half period, and well beyond the five-month appellate period, on which *Demore* relied in describing detention pending removal proceedings as "brief." 538 U.S. at 529-30.

102. Length of detention. Two hundred sixty-eight days of confinement is substantial by any measure. It is not attributable to any dilatory conduct by Petitioner: she sought a bond hearing through counsel within weeks of her arrest, obtained a federal order compelling one, appealed the denial within three days, and timely appealed the removal order. The good-faith pursuit of the appeals Congress provided is not delay chargeable to a detainee.

103. Likely duration of future detention. The merits appeal received by the Board on August 5, 2026 remains pending. The Board's own published figures reflect a pending caseload that grew from 37,285 to 202,946 while its membership was reduced from 28 to 15. 91 Fed. Reg. 5267, 5270 (Feb. 6, 2026). Should the Board affirm, a petition for review in the Ninth Circuit, with a stay of removal, would extend Petitioner's detention by a year or more. Should the Board remand, proceedings would begin anew before the Immigration Judge. On any realistic projection, the end of Petitioner's confinement is neither imminent nor foreseeable.

104. Conditions of confinement. Petitioner is held in a secure facility operated by a private contractor under conditions that do not differ in kind from penal incarceration.

She is 57 years old and reports hypertension treated with medication. She does not allege inadequate medical care; she alleges that civil confinement of this character and duration weighs heavily in the constitutional balance. *Zadvydas*, 533 U.S. at 690-91.

105. Likelihood of removal. Petitioner's asylum claim is before the Board on a timely appeal. The outcome of that appeal is uncertain, and even an adverse decision would not make her removal imminent; it would start the removal period under § 1231(a)(1)(B) and bring her within § 1231(a)(6), where *Zadvydas* and *Diouf* govern directly. Her detention has thus already outlasted every benchmark that Congress and the courts have supplied for custody pending the resolution of removal proceedings.

106. Reasonable relation to purpose. The sole ground on which bond was denied is flight risk. The Government itself released Petitioner on parole without monetary bond in December 2022, allowed her to depart after she reported in 2025, and arrested her when she appeared, on two consecutive days, at an appointment it had directed her to attend. She has a fixed residence available to her, held employment authorization, pursued an asylum application, and has no criminal history. Confinement of 268 days and counting, to secure the appearance of a 57-year-old woman who has repeatedly appeared when directed, no longer bears the "reasonable relation" to the purpose of securing appearance that *Zadvydas* requires. 533 U.S. at 690-91. Reasonable conditions of supervision—reporting, a fixed residence, and electronic monitoring if warranted—would serve that purpose fully.

107. This count is distinct from *Rodriguez Diaz* and consistent with it. The detainee there had received the complete process § 1226(a) contemplates and challenged only the fourteen months that followed. See Section VI.D, ¶¶ 66-67, above. Petitioner's single custody hearing was, on her account, conducted in a language she could not understand. The duration she alleges here is therefore not time following adequate process; it is time following none. Each additional month of confinement after that hearing increases the private interest on the *Mathews* scale and the risk that an erroneous

deprivation will go uncorrected, without any corresponding increase in the governmental interest in detention. *Mathews*, 424 U.S. at 335.

108. The violation alleged in this count does not depend on the interpreter claim. Civil detention that has become unreasonably prolonged, with no foreseeable end, on a flight-risk rationale contradicted by the Government's own conduct toward Petitioner, violates the Due Process Clause whether or not the April hearing was procedurally adequate. The two claims nonetheless reinforce one another, and the Court may consider them together in fashioning relief.

109. Petitioner preserves the following contingent claim. If the Board dismisses the merits appeal while this Petition is pending, the removal order will become administratively final, 8 C.F.R. § 1241.1(a), and Respondents' authority to detain will shift to 8 U.S.C. § 1231(a). Petitioner will then contend that her confinement, already far longer than the 90-day removal period and the six-month period *Zadvydas* treats as presumptively reasonable, entitles her to release under *Zadvydas*, 533 U.S. at 701, absent a showing by Respondents of a significant likelihood of removal in the reasonably foreseeable future, or at minimum to a bond hearing under *Diouf*, 634 F.3d at 1092 & n.13. Petitioner requests that Respondents be directed to notify the Court within three days of any change in the finality of the removal order or in the asserted statutory basis of custody, and requests leave to supplement this Petition in that event.

110. This count is pleaded in the alternative to Counts One through Four, is as-applied to Petitioner's own custody, and seeks no classwide relief. 8 U.S.C. § 1252(f)(1). If the Court grants release on Count One, it need not reach this count. If the Court concludes that the duration and circumstances of Petitioner's detention have rendered it unreasonable, the appropriate remedy is release on reasonable conditions of supervision; in the alternative, the conditional writ described in Section VIII, at which Respondents bear the burden of proof, would address the violation.

## VIII. RELIEF SHOULD ADDRESS THE ESTABLISHED VIOLATION

111. **Immediate release is the primary relief requested.** If the Court concludes that the present detention lacks a lawful basis, or that no lesser remedy can cure the established violation, the writ should issue and Petitioner should be released. The confinement is now in its ninth month. If the alleged participation defect is established and no later adequate custody process has cured it, continued reliance on the April hearing would require an appropriate habeas remedy. Duration and an allegation alone do not establish a right to unconditional release.

112. In the alternative, a constitutionally adequate hearing can remedy an ongoing procedural deprivation. Petitioner therefore requests a conditional writ requiring, within seven days or such other short period as the Court sets, a custody hearing that provides: competent Spanish interpretation; a meaningful opportunity to present and answer material facts; a determination by a neutral and detached adjudicator; allocation to Respondents of the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk; consideration of her ability to pay and of alternative conditions of release; and an adequate contemporaneous record. Petitioner should be released if Respondents do not provide a conforming hearing within the period ordered.

113. A conditional writ permits relief tailored to an established custody violation. Casas-Castrillon ordered that the petitioner be given a hearing before an Immigration Judge and framed relief in those terms. 535 F.3d at 951-52. District courts in this Circuit have entered the same structure. See Baghdasaryan, No. 1:25-cv-01555-KES-EPG-HC (E.D. Cal. Feb. 20, 2026), Dkt. 17 (adopting findings and recommendation and granting a conditional writ). It targets the alleged defect in the hearing rather than imposing a categorical duration rule or treating the earlier form order as the entire record.

114. Petitioner requests that the hearing be conducted by a neutral and detached adjudicator. She does not allege personal bias on the part of any individual adjudicator. If

the Court concludes that the record of the April 27 proceeding warrants it, Petitioner requests that the hearing be assigned to an Immigration Judge who has not previously ruled on her custody. In the further alternative, if Respondents cannot provide a conforming hearing within the period the Court sets, Petitioner requests that this Court determine conditions of release itself.

115. The Court should not order a particular discretionary bond outcome without the legal and evidentiary basis to do so. The pending BIA appeal can afford relief and must be considered in assessing exhaustion and the appropriate remedy.

116. Petitioner proposes residence with Mónica Lezameta Malpartida, attendance at all required proceedings, and reasonable reporting conditions. These proposals require supporting confirmation from the proposed host. The earlier Wendy Arias financial-sponsorship packet should be considered separately and updated as necessary.

117. Petitioner's account of withheld identity documents supports a request for access to copies reasonably necessary to litigate custody. This Petition does not assert an independent property-return count or seek damages for retained cash, a telephone, or jewelry. Ordinary detention property storage does not itself establish a due process violation cognizable in habeas.

## IX. DECLARATORY RELIEF

118. Petitioner requests declaratory relief only to the extent necessary and jurisdictionally appropriate to resolve the live custody controversy. Section 2201 is not an independent source of subject-matter jurisdiction. No declaration concerning asylum eligibility or the validity of the removal order is requested.

## X. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1. Issue an Order to Show Cause pursuant to 28 U.S.C. § 2243 and General Order 26-05 directing Respondents to file a return within three (3) days of its issuance, and in that return to disclose the current statutory basis for custody and the disposition of both BIA appeals, and to notify the Court within three days of any change in the administrative finality of the removal order or in the asserted statutory basis of custody;

2. Grant the writ and order Petitioner's immediate release from custody, including, upon a finding under Count Five that her detention has become unreasonably prolonged, release on reasonable conditions of supervision;

3. In the alternative, issue a conditional writ directing that Petitioner be released unless, within seven days or such other short period as the Court orders, Respondents provide her a custody hearing before a neutral and detached adjudicator that provides competent Spanish interpretation, a meaningful opportunity to present and answer material facts, and an adequate contemporaneous record, and at which *Respondents bear the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk*;

4. Direct that any such hearing include consideration of Petitioner's ability to pay and of alternative conditions of release, and order her release on reasonable conditions if Respondents do not carry that burden;

5. Order Petitioner's release if Respondents fail to provide a conforming hearing within the period ordered;

6. Direct reasonable access to copies of identity and immigration documents necessary to litigate this custody case;

7. Require the advance notice of removal outside this District specified in General Order 26-05 and, upon the required showing, further tailored relief preserving jurisdiction and access to counsel;

8. Require preservation and lodging of the complete separate custody record, including the April 27 recording identified in the May 7 memorandum, the memorandum

and addendum, submissions and orders, and any records identifying the July 28 and August 18 proceedings; if a recording does not exist or cannot be located, require an explanation and available substitute records;

9. Permit a short supplemental submission addressing the lodged record, and require a prompt compliance report after any ordered hearing or release;

10. Grant narrowly tailored declaratory relief on any established violation supporting unlawful custody;

11. Award costs or fees only to the extent authorized by applicable law, including 28 U.S.C. § 2412, upon a separate, properly supported application; and

12. GRANT such other and further relief as the Court deems just and proper.

Dated: October 15, 2026

Indio, California

Respectfully submitted,

LAW OFFICE OF CHRISTOPHER JOSEPH DESALVA

Christopher J. DeSalva

CHRISTOPHER JOSEPH DESALVA

Attorney for Petitioner

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I, CHRISTOPHER JOSEPH DESALVA, declare:

1. I am an attorney licensed to practice before this Court and counsel of record for Petitioner Luz Agripina Angeles-Cano in this action.

2. Petitioner is detained at Adelanto and requires Spanish interpretation. Section 2242 permits someone acting on her behalf to sign and verify the application. I submit this verification in that capacity; the need for interpretation does not itself make her incapable of executing a translated declaration.

3. I have read this Petition. Statements based on records are made on the basis of the records identified. Statements concerning Petitioner's experiences are based on information provided through interpretation. Matters expressly stated on information and belief remain subject to confirmation, including the present status of the separate custody appeal. I believe those allegations to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 15, 2026, at Indio, California.

Christopher J. DeSalva

CHRISTOPHER JOSEPH DESALVA

Attorney for Petitioner

## INDEX OF EXHIBITS

The exhibits accompanying this Petition are identified below. Exhibit N contains selected sponsorship and community-support materials from the earlier custody submission. Only the documents actually included are listed; no reserved exhibit is offered as evidence.

| Ex. | Description | Cited in Petition |
|---|---|---|
| J | April 28 custody order; May 7 memorandum and addendum | ¶ 6, 46 |
| L | Custody appeal and July 13 brief | ¶ 22, 49 |
| A | DHS release records: I-213, I-385, I-831 | ¶ 27 |
| B | Spanish ICE reporting notice and translation | ¶ 28 |
| C | Available I-94 departure-record copy | ¶ 28 |
| D | USCIS asylum receipt and biometrics notices | ¶ 31 |
| E | Identification copy, SSA receipt, EAD notice | ¶ 32 |
| G | I-862 Notice to Appear and service certificate | ¶ 37 |
| H | Federal response in prior habeas, Dkt. 8 | ¶ 42 |
| I | April 20 TRO in prior habeas, Dkt. 9 | ¶ 42 |
| N | Selected Wendy Arias sponsorship and community-support materials | ¶ 44 |
| K | Prior joint report and mootness dismissal | ¶ 48 |
| M | Merits-appeal receipt and October 8 EOIR status printout | ¶ 50 |

**CERTIFICATE OF SERVICE**

I, Dr. Victor M. Viruena, declare that I am over the age of eighteen years and not a party to this action, and that on October 15, 2026, acting on behalf of Christopher J. DeSalva, Esq., counsel for Petitioner, I caused the foregoing VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241, together with its accompanying exhibits, to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all Respondents and all counsel of record, including the United States Attorney's Office for the Central District of California as counsel for the named Respondents. Service is complete upon electronic filing pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 5-3.2.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 15, 2026, at Palm Desert, California.

*Dr. Victor Viruena*

Dr. Victor M. Viruena
On behalf of Christopher J. DeSalva, Esq., Attorney for Petitioner